**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUNICE HUSBAND,** | : | **Civil No. 3:14-CV-177** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Mariani)** |
| | : | |
| **D. KNAPP, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of The Case

#### A.   Procedural History

Eunice Husband is an angry, combative inmate with a phobic fear of blood borne contagion. This constellation of personal qualities is revealed in a *pro se* complaint which this plaintiff, a federal prisoner, has now filed in federal court. (Doc. 1.)

In this complaint Husband recites that he is housed in the Special Management Unit of the United States Penitentiary, Lewisburg. (Id.) Much of Husband's complaint is focused upon his contentious relationship with his former cellmates at this facility, and his preference to be housed in a cell without cellmate. As described by Husband, these issues have manifested themselves in several ways. First, Husband reports that he has been involved in at least three fights with cellmates between April and August

2013. (Id.) Husband also alleges that he has reported the prospect for violence with his cellmates to prison officials, but they have failed to take any action to curb this potential violence. (Id.) Instead, according to Husband, prison officials have coerced him to accept cellmates with whom he has later had physical confrontations by threatening to place Husband in four-point restraints unless he agrees to have another prisoner housed in his cell. (Id.) Thus, liberally construed, Husband appears to be advancing an Eighth Amendment claim against those prison officials who, he alleges, have intentionally placed him in these potentially violent circumstances by housing him with other prisoners with whom he fights. (Id.)

Husband's penchant for fighting, in turn, had led to another grievance by this inmate. Reciting that a number of the prisoners with whom he has fought are infected with blood borne disease, Hepatitis C, Husband complains that prison officials have failed to sufficiently protect him from this illness. (Id.) According to Husband, he has requested blood testing from prison medical staff, but has been dissatisfied with their response to his requests. In particular Husband was disturbed that when a prison nurse, defendant Miosi, attempted to assist him with respect to this concern she presented him with medical forms in January 2014 which suggested to Husband that prison officials believed that he was engaged in unprotected sex or sharing needles, activities he adamantly denies. (Id.)

Husband's pleadings reflect that this inmate-plaintiff has a profound, consuming and fixed concern that he may be infected by some blood-borne disease. Indeed, due to this concern, Husband seeks injunctive relief from this court in the form of an order directing blood testing for the plaintiff conducted by a "neutral entity." (Id.)   Husband also demands damages of at least $50,000,000, and as much as $100,000,000, depending upon the outcome of these independent blood tests. (Id.)

Husband's complaint names total of 18 correctional defendants. As to five of these defendants, Husband sets forth well-pleaded facts describing their alleged roles in the events which he contends put his physical safety at risk.[1] However, a review of this pleading discloses that, with respect to the remaining 13 defendants, many of whom are supervisory officials, in at least 12 instances Husband either fails to allege well-pleaded facts relating to the defendant,[2] or Husband expressly premises the liability of the defendants on claims of *respondeat superior,* alleging that the defendants are responsible for the overall operations of the prison.[3] Finally, one defendant, Nurse Miosi, is named in this action despite the fact that the only well-

---

[1]These defendants, as to whom Husband has made specific, articulable factual averments include defendants Knapp, Stover, Sherman, Carper and Diltz.

[2]See, for example, defendants Frederick and Adonis.

[3]See defendant Taggart, Entzel, Wilson, Young, Benfer, Brown, Magyar, Pigos, Norwood, and Tafelski.

pleaded allegations set forth in Husband's complaint indicate that the nurse endeavored to care for Husband after one of his fights, and then attempted to discuss his request for blood testing with him, albeit in a fashion that Husband deemed offensive since it suggested to Husband that he was being accused of IV drug use or engaging in unprotected sex. (Id.)

Along with his complaint, Husband has moved of leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, we will grant this motion for leave to proceed *in forma pauperis*, but we recommend that, with respect to 13 of the defendants named by the plaintiff, the court should dismiss the complaint for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

## II.   **Discussion**

### A.   **Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which  seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

**(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened

form of pleading, requiring a plaintiff to plead more than the possibility
of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be

granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009),

the Supreme Court held that, when considering a motion to dismiss, a court should

"begin by identifying pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth." Id. at 679. According to the Supreme Court,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of

the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recite some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint);  Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue");Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately

50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).

**B.    In Its Current Form, This Complaint Fails as a Matter of Law With Respect to Thirteen Named Defendants**

**1.    Husband  Has Not Alleged Facts Giving Rise to Supervisory Liability**

In this case Husband's complaint fails to state a claim upon which relief may be granted with respect to at least 13 of the defendants named in this pleading. At the outset, Husband has named 12 supervisory defendants but has not alleged sufficient facts to give rise to supervisory liability. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison  supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  <u>Morse v. Lower Merion School Dist</u>., 132 F.3d 902 (3d Cir. 1997); <u>see also Maine v.Thiboutot</u>, 448 U.S. 1

(1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

-11-

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Here, in a number of instances Husband simply names various prison supervisors as defendants in the caption of this case without making any factual allegations about these defendants in the body of this pleading. To the extent that Husband premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Husband sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Husband cannot rely upon either of these theories of supervisory liability to support his current complaint. First, Husband has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their]

subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010). Moreover, there is no claim of supervisory liability here grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010), since Husband has not identified any policy which led to the various injuries which he alleges that he has suffered.

Furthermore, to the extent that Husband's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>Speight v. Sims</u>, 283 F. App'x 880 (3d Cir. 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F.

Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer

any substantive constitutional rights upon prison inmates, the prison officials' failure

to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No.

04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in

a prison administrative appeal process does not implicate a constitutional concern.").

As the United States Court of Appeals for the Third Circuit observed when disposing

of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third

Circuit has recently held that summary dismissal is appropriate "because there is no

apparent obligation for prison officials to investigate prison grievances. See Inmates

of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v.

Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against these 12 supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

## 2.    Husband Has Failed to State a Claim Against Nurse Miosi

Furthermore, Husband has not alleged well-pleaded facts showing that his serious medical needs were met by deliberate indifference by defendant Miosi, a nurse at the prison. In this case, the gravamen of Husband's complaint against Nurse Miosi is that this defendant violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. The plaintiff faces an exacting burden in advancing this Eighth Amendment claim against this prison officials in her individual capacity. To sustain such a claim, Husband must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

-16-

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Husband is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"Although this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment, we also have recognized: 'Estelle makes clear that if "unnecessary and wanton infliction of pain," ... results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' Id. at 347." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). Thus, in order to establish a serious medical need the "plaintiff must make an '*objective*' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a '*subjective'* showing that defendant acted with "a sufficiently culpable state of mind.' See Wilson v. Seiter, 501

U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)." <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002).

As to the second element of this claim– a showing of deliberate indifference– it is well settled that deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct.

13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard

> for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for

sickle cell anemia falls well short of demonstrating deliberate indifference); <u>Sherrer v. Stephen</u>, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"). Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of treatment to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. <u>See, e.g.,</u> <u>Gause v. Diguglielmo</u>, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); <u>Innis v. Wilson</u>, 334 F.App'x 454 (3d Cir. 2009)(same); <u>Whooten v. Bussanich</u>, 248 F.App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F.App'x 390 (3d Cir. 2007)(same). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

In this case, the only well-pleaded allegations set forth in Husband's complaint concerning defendant Miosi indicate that the nurse endeavored to care for Husband after one of his fights, and attempted to discuss his request for blood testing with him,

albeit in a fashion that Husband deemed offensive since it suggested to Husband that he was being accused of IV drug use or engaging in unprotected sex. (Id.) These allegations fall far short of deliberate indifference to a serious medical need. Quite the contrary, they seem to reflect an effort by defendant Miosi to meet Husband's medical needs. Therefore, this claim fails as a matter of law with respect to defendant Miosi.

### C.   The Plaintiff's Demand for a Specified Sum of Damages Should be Stricken

Further, we note that the Court should also strike the various claims for specific sums of unliquidated damages, $50,000,000 to $100,000,000, from this *pro se* complaint. In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, the plaintiffs' various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain

> statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth
> any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

### D.    These Thirteen Defendants Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against 13 of these defendants upon which relief may be granted. While this screening merits analysis calls for dismissal of this action with respect to these defendants, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court

provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint with respect to these defendants at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, the Plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED (Doc. 2), but IT IS RECOMMENDED that the Plaintiff's complaint be dismissed with respect to the following defendants–defendant Miosi, Taggart, Entzel, Wilson, Young, Benfer, Brown, Magyar, Pigos, Norwood, Tafelski, Frederick and Adonis–without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of February, 2014.

*S/Martin C.  Carlson*

Martin C. Carlson
United States Magistrate Judge